Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREDERICK S. KING,**<br><br>                    **Plaintiff,**<br><br>           v.<br><br>**DIRECTOR BECKY SCOTT,** *et al.*,<br><br>                    **Defendants.** | **Civil Action No.: 24-2380 (ES) (AME)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Frederick S. King is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"). (D.E. No. 1 ("Complaint" or "Compl.")). The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss it, as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. Plaintiff has also moved for appointment of *pro bono* counsel. (D.E. No. 4 ("Motion for Appointment of Counsel")). For the reasons below, the Court **DISMISSES** the Complaint in its entirety *without prejudice* for failure to state a claim for relief. The Motion for Appointment of Counsel is **DENIED** *without prejudice*.

**I.    BACKGROUND**

Plaintiff was a pretrial detainee at Hudson County Jail at the time he filed his Complaint.[1] (Compl. at 3 & 6). He names as defendants Director Becky Scott ("Scott"), the Director/Warden

---

[1] Plaintiff indicates that he is a "[c]onvicted and sentenced state prisoner," but he also alleges that Defendants "disregard[ed] [him] and [his] health and safety as a pretrial detainee." (Compl. at 2 & 6). Liberally construing his *pro se* pleading, the Court treats Plaintiff as a pretrial detainee.

of Hudson County Jail, and Maxim Casas, Director of Nurses ("Casas"). (*Id.* at 3). Casas is allegedly employed by WellPath, the medical contractor for Hudson County. (*Id.* at 6). Plaintiff also names "Hudson County New Jersey" ("Hudson County") as a defendant in the caption. (*Id.* at 1). Plaintiff claims that Scott, acting in her official capacity, failed to protect him, "ignoring C.D.C. policy with lack of care failing to communicate with D.O.N. [Director of Nurses]." (*Id.* at 4). Casas, "in her official capacity," likewise did not administer or follow CDC guidelines to protect Plaintiff from COVID-19 by "failing to isolate infected persons with deliberate[] indifference." (*Id.*). Because official-capacity claims against Casas must be treated as claims against her employer, *see infra* Section III.A., the Court further construes the Complaint as naming WellPath as a defendant.[2]

Plaintiff alleges that, on or about October 2022, he was housed in "B" and that "the jail" failed to provide "hand sanitizer, mask[s], [and] disinfect ignoring CDC Guidelines and mandated policy to prevent potential spread and infection of Covid 19." (*Id.* at 5). Scott and Casas failed to "communicate" even though they had "superior knowledge" of COVID-19 policies and mandates due to their official positions. (*Id.* at 5–6). They "substantively" disregarded Plaintiff, his health, and safety as a pretrial detainee absent an adjudication of guilt and were deliberately indifferent, thereby causing an outbreak in which Plaintiff tested positive for Covid after feeling ill. (*Id.* at 6). Plaintiff had headaches, shortness of breath, feared losing his life, loss of taste, fatigue, memory loss, and other "unidentified" sequalae. (*Id.*). The correctional facility also housed inmates from five counties ("Cumberland, Mercer, Union, Hudson, New York") and federal inmates, and it also "has federal agents, Maverick Cleaning, Sheriff Dept, WellPath medical staff, [and] correctional officers." (*Id.*). These circumstances allegedly "created [a] highly contagious atmosphere with

---

[2]  Accordingly, the Court refers to Scott, Casas, Hudson County, and WellPath as "Defendants."

wanton conduct." (*Id.*). Plaintiff appears to allege that Defendants knew or should have known that the circumstances created such an atmosphere and that "such neglect was a lack of care and concern for inmates['] safety or potential heightened risk of death." (*Id.*). Furthermore, "[a]t the time [Plaintiff] was 56 years of age with underlining health issues such as high blood pressure, borderline diabetic, etc." (*Id.*). "The WellPath D.O.N. failed to implement policy and[/]or communicate with Dir. Becky Scott[,] overseer of the operation of Hudson County Jail." (*Id.*).

According to Plaintiff, he "informed Sgts, lieutenants, and housing officers of [his] concerns in terms of safety precautions, failing to wear mask, no hand sanitizer etc[.]" and "none of the H.C.D.O.C. officers protected [him] from catching Covid." (*Id.* at 5). Plaintiff requests an incentive payment, settlement, or jury trial to determine the appropriate monetary compensation as well as "a posted policy and training of H.C.D.O.C. staff." (*Id.* at 6).

On May 2, 2024, the Court entered an order granting Plaintiff's application to proceed *in forma pauperis* and directing the Clerk of Court to file the Complaint. (D.E. No. 3 at 1). Plaintiff's Motion for Appointment of Counsel was filed on June 7, 2024. (D.E. No. 4). According to a letter dated October 13, 2024, Plaintiff is no longer incarcerated at the Hudson County Jail. (D.E. No. 5 ("Oct. 13, 2024 Ltr.")).

## II.     STANDARDS OF REVIEW

District courts must review complaints in civil actions in which a convicted prisoner or pretrial detainee is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see id.* § 1915A(a), or brings an action with respect to prison conditions, *see* 42 U.S.C. § 1997e(c). District courts may sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks

monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B), 1915A(a), or 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3rd Cir. 1986)).

To survive sua sponte screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)–(3). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations omitted);

4

*see also Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986) (stating that the complaint must contain sufficient facts to put the defendants on notice permitting them to frame an answer to the plaintiff's allegations). A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555, 557). While courts liberally construe *pro se* pleadings, *pro se* litigants still are required to allege sufficient facts to support a claim and to comply with the pleading requirements of Rule 8. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

## III.   DISCUSSION

Here, the Court construes the Complaint as asserting supervisory liability claims against Scott and Casas, and *Monell* claims against Hudson County and WellPath, under Section 1983 and the Due Process Clause of the Fourteenth Amendment for unconstitutional conditions of confinement and inadequate medical care related to his alleged COVID-19 exposure and infection. As discussed below, the Court dismisses Plaintiff's claims *without prejudice*.

### A.   Supervisory Liability and *Monell* Claims

A civil rights plaintiff must establish that the named defendant was personally involved in the alleged constitutional violation to support an individual-capacity claim for monetary relief.[3] *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). A "showing of direct responsibility" by the defendant is required, and the case law eschews any "theory of liability" in which defendants played "no affirmative part

---

[3] In his Complaint, Plaintiff requests, in addition to monetary damages, "a posted policy and training of H.C.D.O.C. staff." (Compl. at 6). However, any claim for injunctive relief is moot because Petitioner has been released from the Hudson County Jail. (*See* Oct. 13, 2023 Ltr.); *see Zelaya v. Ortiz*, No. 21-14956, 2024 WL 261277, at *2 n.2 (D.N.J. Jan. 24, 2024); *Gilliam v. Warden*, No. 23-3892, 2023 WL 8643570, at *2 n.2 (D.N.J. Dec. 14, 2023).

in depriving any[one] . . . of any constitutional rights." *Rizzo* v. *Goode*, 423 U.S. 362, 376–77 (1976). Accordingly, the plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676.

"A supervisor's '[p]ersonal involvement may be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.'" *McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *2 (D.N.J. July 29, 2024) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

"Alternatively, a plaintiff seeking to show personal involvement for a supervisor may plead facts which show that the alleged constitutional violation is the result of a policy, practice, or custom put into effect by the supervisor." *McCoy*, 2024 WL 3580662, at *2 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–85 (3d Cir. 2003)). Specifically, a plaintiff must demonstrate that: (i) the existing custom and practice in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (ii) the defendant-official was aware that the custom and practice created an unreasonable risk; (iii) the defendant was indifferent to that risk; and (iv) the constitutional injury was caused by the failure to implement the appropriate practice or procedure. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). The plaintiff must identify the expected policy or practice that the supervisor failed to employ. *See id.* A single incident is generally insufficient to establish the existence of a policy or custom. *See Reed v. Jersey City*, No. 21-3921, 2022 WL 1664621, at *7 (D.N.J. May 24, 2022).

In addition, a plaintiff may seek to hold a supervisor liable for failing to train his or her subordinates. "Failure to" claims constitute a subcategory of policy or practice liability. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). "[A] plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances." *Best v. Hicks*, No. 22-6911, 2024 WL 4891774, at *6 (D.N.J. Nov. 26, 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

In contrast to claims naming an official in his or her individual or personal capacities, official-capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Fisher v. Cnty. of Mercer*, No. 23-20947, 2024 WL 3594423, at *4 (D.N.J. July 31, 2024) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1965)). "Therefore, 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity' and 'the real party in interest is the entity.'" *Id.* (quoting *Graham*, 473 U.S. at 165–66). To the extent Plaintiff names Scott (the Director/Warden of Hudson County Jail) in her official capacity (Compl. at 2), the Court treats such claims as *Monell* claims against Hudson County. Likewise, the Court construes the official-capacity claims against Casas (the Director of Nurses at Hudson County Jail) as claims against her alleged employer, WellPath (*id.* at 3 & 6). *See Gilmore v. Lamas*, No. 19-5571, 2019 WL 6840717, at *4 (E.D. Pa. Dec. 13, 2019) ("Accordingly, the official capacity claims against Green [a nurse employed by CorrectCare Solution] must be treated as claims against Correct Care Solution, a contractor with the Department of Corrections.").

To state a plausible *Monell* claim against a municipality, such as Hudson County, "a plaintiff must plead facts showing that the municipal defendant caused the underlying constitutional violation through its issuance or adoption of a policy, practice or custom." *Echevarria v. Essex Cnty. Dep't of Corr.*, No. 20-0498, 2020 WL 1243810, at *2 (D.N.J. Mar. 16, 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The municipal policy, practice, or custom must constitute the "moving force" behind the alleged violation. *See id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). The plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered. *See Harley v. City of New Jersey City*, No. 16-5135, 2017 WL 2779466, at *7–8 (D.N.J. June 27, 2017). A policy is made when an official possessing final policymaking authority issues a proclamation, policy, or edict. *See Fong v. City of Newark*, No. 22-7243, 2024 WL 5074763, at *3 (D.N.J. Oct. 12, 2024). "Custom 'can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Furthermore, a municipality's failure to train or supervise its personnel can result in an actionable violation under Section 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). *Monell* liability based on a municipality's failure to train or supervise employees "requires a showing that the failure amounts to a deliberate indifference to the rights of persons with whom those employees will come into contact. Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (alteration in original) (internal quotations and citations omitted); *Hammon*

*v. Kennett Twp.*, 746 F. App'x 146, 150 (3d Cir. 2018) (noting that the "policy, practice or custom" must have "directly caused [the] constitutional harm") (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citations and footnote omitted). Therefore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 61 (internal quotations omitted).

The *Monell* standards also apply to alleged municipal contractors such as WellPath. *See Roman v. Cnty. of Chester*, No. 23-1662, 2024 WL 4844792, at *9 (E.D. Pa. Nov. 20, 2024); *Smart v. Aramark Inc.*, No. 14-3007, 2014 WL 2215972, at *1 (D.N.J. May 29, 2014).

### B.   Conditions of Confinement Claims

Conditions of confinement claims brought by pretrial detainees like Plaintiff are considered under the Due Process Clause of the Fourteenth Amendment. *See E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019). The Supreme Court has stated that "[i]n evaluating whether a pretrial detainee's conditions of confinement violate his substantive due process rights, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Umarbaev v. Lowe*, No. 20-0413, 2020 WL 1814157, at *6 (M.D. Pa. Apr. 9, 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into

whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). Only conditions of confinement resulting in "genuine privations and hardship over an extended period of time" violate due process. *Bell v. Wolfish*, 441 U.S. 520, 542 (1979). Additionally, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). The totality of the circumstances should be considered in evaluating a pretrial detainee's claim of unconstitutional punishment. *See Bistrian*, 696 F.3d at 373.

In *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit discussed the due process standard in the context of challenges brought by immigration detainees to a detention facility's COVID-19 policies and practices. "*Hope* explained that when evaluating a detention facility's protocols, courts 'must acknowledge that practical considerations of detention justify limitations on many privileges and rights.'" *Lawson v. Hudson Cnty. Bd. of Freeholders*, No. 22-4340, 2023 WL 6971540, at *10 (D.N.J. Oct. 23, 2023) (quoting *Hope*, 972 F.3d at 326). In turn, courts must "'ordinarily defer' to the expertise of prison officials in responding to COVID-19 unless there is 'substantial evidence in the record that the officials have exaggerated [or, here, minimized] their response' to the situation." *Id.* (alteration in original) (quoting *Hope*, 972 F.3d at 326); *see also Harris v. Scott*, No. 24-1122, 2024 WL 4512015, at *3 (D.N.J. Oct. 16, 2024) (quoting identical language regarding deference owed to correctional officials' response to COVID-19).

10

> **i. COVID-19 Risks and Alleged Deficiencies in COVID-19 Practices in Hudson County Jail**

To the extent Plaintiff claims his due process rights were violated merely by having been exposed to COVID-19, by being at an increased risk of exposure to the virus, or because he contracted COVID-19, such allegations are insufficient because exposure alone (or infection alone) does not constitute a constitutional violation. *See Hope*, 982 F.3d at 330 (rejecting petitioners' argument that, because there was no cure or vaccine, "exposure to [COVID-19] is per se unconstitutional"); *Lawson*, 2023 WL 6971540, at *11 ("At the outset, to the extent Lawson claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone does not violate the Constitution.") (citing *Hope*, 972 F.3d at 329; *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022)); *Bennett*, 2022 WL 17887227, at *3 ("Likewise, Bennett's one-sentence allegation in his IFP application—that he tested positive for COVID—even if true, is insufficient to state claim for unconstitutional conditions of confinement. Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.") (citing *Hope*, 972 F.3d at 329).

Plaintiff alleges that "the jail failed to provide hand sanitizer, mask[s], [and] disinfect ignoring CDC guidelines and mandated policy to prevent potential spread and infection of COVID 19." (Compl. at 5). He similarly claims that Casas "failed to administer, adhere, or follow CDC guidelines to protect [him] from COVID-19 via failing to isolate infected persons." (*Id.* at 4). He indicates that such failures resulted in a COVID-19 "outbreak" and his infection. (*Id.* at 6). According to the Complaint, Plaintiff "was 56 years of age with underlining health issues such as high blood pressure, borderline diabetic, etc." (*Id.*). Liberally construed, Plaintiff's Complaint

11

indicates that he had specific vulnerabilities increasing the risk of contracting a serious illness if he was exposed to, and infected by the virus.

Plaintiff's conclusory allegations do not identify the "CDC guidelines and mandated polic[ies]" that were ignored or not followed. *See Lawson*, 2023 WL 6971540, at *12 ("Additionally, Lawson's assertions that cleaning supplies are watered down, testing is done improperly, and an unspecified CDC guideline was not followed, are conclusory and insufficient to support a claim premised on constitutional conditions of confinement.") (citing *Iqbal*, 566 U.S. at 678; *Vega v. Aviles*, No. 23-651, 2023 WL 2263715, at *4 (D.N.J. Feb. 28, 2023)). He also does not identify the policies that were in place at the Hudson County Jail and how they fell short. *See Gordon v. Casas*, No. 24-0893, 2024 WL 1366516, at *2 (D.N.J. Mar. 29, 2024) ("Plaintiffs' Complaint does not address what policies or protocols were in place to prevent the spread of the COVID-19 virus and how these policies were deficient."); *Vega*, 2023 WL 2263715, at *4 ("The manner in which the prison protocols fell short is not specified."). Despite Plaintiff's contention that he did not personally have hand sanitizer or disinfectant, "[p]laintiff does not allege, for example, that no COVID-19 testing, quarantining, or ***facility cleaning*** was occurring." *See Ordonez v. Dep't of Corr.*, No. 22-5233, 2023 WL 3675946, at *5 (D.N.J. May 26, 2023) (emphasis added); *see also Harris*, 2024 WL 4512015, at *3 ("While Plaintiffs submit that they were not provided with proper sanitation equipment, but do not allege that there were no cleaning supplies provided."). In fact, his positive COVID-19 test and the presence of "Maverick Cleaning" staff at the facility indicate that testing and cleaning were performed at the Hudson County Jail. In the end, "imperfections in [COVID-19 procedures]—particularly in the challenging environment of a correctional environment with many competing security and logistical considerations—do not, without more, amount to unconstitutional conditions of confinement."

*Ordonez*, 2023 WL 3675946, at *5 (citations omitted); *see also Lawson*, 2023 WL 26971540, at *11 (same).

Plaintiff also provides no factual content to support his bald "outbreak" assertion. In addition, he does not allege whether he was vaccinated, even though "[i]t is well known that COVID-19 vaccines, which were widely available before and during [October 2022], are effective to prevent serious illness from COVID-19 in most people." *See Andino v. Aviles*, No. 22-5706, 2023 WL 5970920, at *3 (D.N.J. Sept. 14, 2023) (concluding that the plaintiff failed to substantial risk to his health if he became infected with the virus) (citing *Folk v. Warden Schuylkill FCI*, No. 23-1935, 2023 WL 5426740, at *1 (3d Cir. Aug. 23, 2023); *Garett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021)).

### ii. Culpable State of Mind, Personal Involvement, and *Monell* Liability

Furthermore, Plaintiff's conditions of confinement claims fail because he does not plausibly allege that either Scott or Casas acted with a culpable state of mind, or were personally involved in the alleged constitutional deprivation. Nor has Plaintiff alleged facts plausibly showing that there was a policy, custom, or practice of Hudson County or WellPath—or a deficiency in employee training or supervision—amounting to deliberate indifference, resulting in a constitutional violation, as required for *Monell* liability. Insofar as Plaintiff suggests that Defendants were on notice of alleged safety violations because he informed unidentified "Sgts, lieutenants, and housing officers of [his] concerns" (Compl. at 5), the failure to respond to a grievance generally does not satisfy the personal involvement requirement. *See Gordon*, 2024 WL 1366516, at *3; *Ordonez*, 2023 WL 3675946, at *6; *Selimi v. Aviles*, No. 22-5944, 2023 WL 279717, at *3 (D.N.J. Jan. 18, 2023). In any event, he does not allege that his concerns were presented to either Scott or Casas.

13

Plaintiff's assertions that Scott and Casas "failed to communicate while having superior knowledge in [their] official positions of COVID policies" and violated his substantive due process rights by "disregarding [him] and [his] health and safety as a pretrial detainee absent [an] adjudication of guilt with deliberate indifference" are conclusory and vague. *See Iqbal*, 596 U.S. at 678 (stating that a complaint merely offering labels, conclusions, or a formulaic recitation of the elements of the claim is insufficient); *Lawson*, 2023 WL 6971540, at *12 ("These allegations [including allegations that defendants failed to communicate despite having superior knowledge regarding healthcare] are conclusory and in many respects vague and they fail to provide a factual basis to link any of these defendants to the alleged wrongdoing.") (citing *Twombly*, 550 U.S. at 555).

Plaintiff vaguely refers to the presence of federal inmates and detainees from other counties, federal agents, and correctional, medical, and cleaning staff in the facility, which he indicates "wantonly" and "knowingly" created a "highly contagious" atmosphere threatening the life and health of inmates. (Compl. at 6). However, a policy of accepting detainees from other jurisdictions "is not unconstitutional on its face," *Brown v. Hudson Cnty N.J.*, No. 24-3948, 2024 WL 4100404, at *3 (D.N.J. Sept. 5, 2024), and Plaintiff's conclusory assertions do not provide sufficient facts to infer that the resulting conditions at the Hudson County Jail violated his constitutional rights, *see id.*; *Lawson*, 2023 WL 6971540, at *9 ("Transferring detainees to Hudson County, a facility that had more space after it ceased housing immigration detainees, is not a constitutional violation, and may even be seen as a salutary measure for reduction of crowding.").

To the extent Plaintiff claims that Defendants exhibited deliberate indifference to specific circumstances (such as his age and high blood pressure) rendering him particularly susceptible to a severe COVID-19 infection, he does not allege any facts "to suggest that any of the Defendants

14

knew Plaintiff had a particular vulnerability to COVID-19." *Abner v. Ellis*, No. 21-15339, 2022 WL 17177838, at *6 (D.N.J. Nov. 23, 2022).

For the foregoing reasons, the Court concludes that Plaintiff does not allege sufficient facts to satisfy the requirements of a due process claim for unconstitutional conditions of confinement. He likewise fails to state a supervisory liability or *Monell* claim. The Court accordingly denies the conditions of confinement claims *without prejudice* for failure to state a claim.

### D. Inadequate Medical Care Claims

In *Hope*, the Third Circuit considered the immigration detainees' alternative theory that they were deprived of substantive due process when the government "acted with deliberate indifference to their serious medical needs (*i.e.*, their vulnerability to CVOID-19 because of their ages and medical conditions)." *Hope*, 972 F.3d at 329 (citations omitted). "To establish deliberate indifference, Petitioners must show that the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* (emphasis in original) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). "But 'mere disagreement' as to the response to the risk to Petitioners in light of their medical condition will not support constitutional infringement," *id.* at 329 (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)), and "deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in the criminal law," *id.* at 330 (cleaned up). The *Hope* court emphasized the unique circumstances that COVID-19 presents to correctional officials and the need to accord due deference to prison officials in responding to detainees' health needs. *See id.* at 330–31.

Plaintiff does not plead sufficient facts permitting this Court to draw the reasonable inference that Defendants knew of and disregarded an excessive risk to Plaintiff's health in light of COVID-19. *See Iqbal*, 556 U.S. at 678; *Hope*, 972 F.3d at 330. He claims that "[a]t the time

petitioner was 56 years of age with underlining health issues such as high blood pressure, borderline diabetic, etc.," but, as the Court has noted, Plaintiff fails to plead any facts regarding either his vaccination status or Defendants' knowledge of a particular vulnerability to COVID-19. *See Andino*, 2023 WL 5970920, at *3; *Abner*, 2022 WL 17177838, at *6.  He further does not plead facts indicating that Scott or Casas, who held supervisory positions at the Hudson County Jail, were personally involved in the alleged deprivation.  Nor has Plaintiff alleged facts plausibly showing a municipal or corporate policy, custom, practice, or a municipal or corporate failure to train or supervise employees, causing the alleged constitutional deprivation.  The Court accordingly dismisses the inadequate medical care claims *without prejudice* for failure to state a claim.

### E. Appointment of Counsel

Plaintiff moves for the appointment of pro bono counsel.  (D.E. No. 4).  Appointment of counsel is a privilege, not a statutory or constitutional right.  *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011).  "[D]istrict courts must consider as a threshold matter the merits of the plaintiff's claim." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).

Plaintiff does not satisfy this threshold because he has failed to state a claim for relief. Accordingly, the Court denies the Motion for Appointment of Counsel *without prejudice*.

### IV. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint *without prejudice* for failure to state a claim for relief.  It likewise **DENIES** Plaintiff's Motion for Appointment of Counsel *without prejudice*.  An appropriate order follows.

**Dated: January 24, 2025**

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**

16